666 F.2d 845
 109 L.R.R.M. (BNA) 2186, 92 Lab.Cas. P 13,150
 Ray MARSHALL, Secretary of Labor, United States Department of Labor,
Edward Sadlowski, Intervenor Plaintiff,
Anthony Tomko, Intervenor Plaintiff,
v.
UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC (DISTRICT 15)
(DISTRICT 31) Edward Sadlowski, Intervenor above named, and
the following counsel for Sadlowski: Joseph F. Rauh, Jr.,
Leon Despres, Kenneth J. Yablonski and Judith Schneider, Appellants.
 No. 81-1032.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 22, 1981.
Decided Dec. 16, 1981.
 
 John W. Douglas (argued), Bruce D. Sokler, Covington & Burling, Washington, D.C., for appellants-intervenor plaintiffs.
 T. Timothy Ryan, Sol. Labor, Beate Bloch, Associate Sol., Stanford Dubin (argued), U.S. Dept. of Labor, Washington, D.C., Robert E. Kopp, U.S. Dept. of Justice, Washington, D.C., Marshall H. Harris, Regional Sol., U.S. Dept. of Labor, Philadelphia, Pa., for appellee, Department of Labor.
 Robert M. Weinberg (argued), Michael H. Gottesman, David M. Silberman, Bredhoff, Gottesman, Cohen, Chanin, Weinberg & Petramalo, Washington, D.C., for appellee United Steelworkers of America.
 Before ALDISERT, HIGGINBOTHAM and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This case, which stems from a union member's successful challenge to a union election conducted in District 31, in 1973, comes to us on appeal for the second time over the issue of attorney's fees. In Brennan v. United Steelworkers of America, 554 F.2d 586 (3d Cir. 1977), cert. denied, 435 U.S. 977, 98 S.Ct. 1627, 56 L.Ed.2d 71 (1978),[1] we held that an award of attorney's fees was not precluded by Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 481 et seq. and that the "common benefit" theory was available as a basis for awarding attorney's fees. On remand, the district court was instructed to exercise its discretion on the issue of "(w)hether an award is warranted and, if so, the amount of such award ... in light of the broader application of the 'common benefit' rationale...." Brennan, 554 F.2d at 608. As a guiding principle our court wrote that, "although union members should not be required to pay for unnecessary duplication of legal services, it should not be presumed that mere duplication of effort by either counsel for Sadlowski or counsel for the Department of Labor was unnecessary or non-beneficial."[2] (footnote in original renumbered).
 
 
 2
 The case was remanded to the district court which assigned the matter to a United States Magistrate for a review of the record and for the taking of additional evidence. The Magistrate's Report and Recommendation, recommended the denial of the fee claim, and was filed on June 7, 1979. The district court adopted the magistrate's findings of fact and recommendation and supplemented the report with additional findings of fact. On October 31, 1980, an Order was entered denying the application for attorneys' fees.
 
 
 3
 After reviewing the very extensive record in this case and after hearing able counsel in oral argument, we have concluded that the district court's denial of fees for work performed by Sadlowski's counsel over the five month period between February, 1973, the date of the first District 31 election and June, 1973, the date of Sadlowski's filing of a complaint with the Secretary of Labor, was error. We will therefore reverse the district court insofar as its order denied Sadlowski's counsel attorneys' fees for the above noted five month period and affirm the remainder of the district court's Order.
 
 I.
 FACTUAL HISTORY
 
 4
 The factual history of this case has been comprehensively recorded in our earlier Brennan decision and in the district court's opinion under review. Consequently, we write here only to summarize those facts.
 
 
 5
 The United Steelworkers of America held an election on February 13, 1973 in District 31 for the position of District Director. District 31 is the largest in the Steelworkers union, consisting of approximately 300 locals and 130,000 members in Illinois and Indiana. The election campaign, between the union's hand-picked successor to the then retiring District Director of thirty years and Sadlowski, was fiercely fought. During the three-day period it took to count the votes, Sadlowski was advised of widespread ballot fraud, illegal electioneering, deprivation of secret balloting and interference with observers. When the tabulations were complete and Sadlowski's adversary declared the winner by a 1,785 vote margin, Sadlowski hired counsel to investigate the allegations of voting fraud and to aid him in exhausting the internal administrative remedies required by the constitution of the Steelworkers.
 
 
 6
 Sadlowski filed a protest with the appropriate union authorities who, after reviewing his case, sustained the election result. An appeal was taken to the International Executive Board which likewise denied Sadlowski's challenge. Having exhausted his union remedies, Sadlowski filed a timely complaint under the LMRDA with the Secretary of Labor.
 
 
 7
 The Secretary investigated the complaint and on November 8, 1973 filed a civil suit in the Western District of Pennsylvania seeking to void the District 31 election. The district court granted Sadlowski's motion to intervene as a plaintiff. Following extensive pretrial negotiations, in which Sadlowski's counsel played a role, a settlement was reached calling for a new election in District 31. The district court approved the settlement and a new election was held on November 19, 1974. Sadlowski handily defeated his opponent, who had been serving as Director since the initial election in February, 1973, by a 19,479 vote margin. This result was finalized on December 2, 1974 and Sadlowski assumed the post of District Director.
 
 II.
 
 8
 CLAIMANTS' VERIFIED APPLICATION FOR ATTORNEYS' FEES AND FIRST APPEAL
 
 
 9
 Sadlowski's counsel submitted a Verified Application for Attorneys' Fees with a supporting memorandum to the district court on January 31, 1975. The application detailed the work of four attorneys, Leon Despres, Joseph Rauh, Jr., Kenneth J. Yablonski and Judith Schneider on behalf of Sadlowski. It sought attorneys' fees for work performed prior to the Secretary's filing of a complaint and for "post-complaint efforts to expedite, conduct discovery and bring about a fair rerun settlement, (and) ... to facilitate a fair election itself." Brief for Appellants at 6.
 
 
 10
 In Brennan, we detailed in three full pages the work allegedly performed by Sadlowski's counsel both pre- and post-complaint. We emphasized the critical nature of private participation in the enforcement scheme of Title IV and at numerous points indicated, either explicitly or implicitly that Sadlowski's "need for counsel cannot be doubted." Brennan, 554 F.2d at 595.
 
 
 11
 The test for an award of attorney's fees is whether counsel's work was a material assistance to the Secretary and ultimately contributed to a result which can be said to be for the common benefit of all union members. The "common benefit" theory, in turn, entails satisfying three elements: whether the benefits may be traced with some accuracy; whether the class of beneficiaries are readily identifiable; and, whether there is a reasonable basis for confidence that the costs may be shifted with some precision to those benefitting. Id. at 604-05. The attorneys for Sadlowski contend that the work they performed on behalf of their client was a material assistance to the Secretary and qualified under each element of the "common benefit" theory. Specifically, they argued before the district court and here on appeal that "the vindication of union democracy (in securing a rerun election) ... is a substantial common benefit conferred on the union and its members ...." Brief for Appellants at 8. Sadlowski's successful challenge served notice on the union and its members that election improprieties would not go unchallenged.
 
 III.
 
 12
 THE MAGISTRATE'S AND THE DISTRICT COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW ON REMAND
 
 
 13
 The magistrate, to whom the case was assigned after remand, reviewed the application for attorneys' fees and recommended that the application be denied. It is clear from reading the magistrate's report that the standard applied was whether the assistance of counsel was strictly necessary to perfect a protest through the union's internal procedures and then to the Secretary of Labor.
 
 
 14
 When considering the work performed by counsel in marshalling the facts and phrasing the issues for presentation to the Secretary, for example, the magistrate wrote, "it was the opinion of Stephen Ernst, who was the lead litigation and trial counsel for the Department of Labor in this suit, that Sadlowski's counsel aided Sadlowski in perserving his rights ...." Nevertheless, because "no showing has been made that the assistance of counsel was necessary to preserve these interests," the work was adjudged by the magistrate to be uncompensable.
 
 
 15
 Similarly, the district court by adopting the magistrate's report seemed to require that the assistance of counsel be necessary. The district court went even further when it considered the overall benefit of Sadlowski's successful protest, writing that:
 
 
 16
 Who desired the benefits from the settlement? Well, certainly Sadlowski did in spite of the fact that his counsel opposed it, because there was a new election in which he won the victory which he had sought originally. The circumstances do not matter as to whether they were hotly contested or not at this time. He, Sadlowski, was victorious. Undoubtedly, he benefitted. And since he was campaigning through his counsel all the way through the continuance of the processing of this action, as was shown to be the case by the evidence produced as a whole, it was Sadlowski's counsel's campaign activities which eventually became victorious.
 
 
 17
 As for any benefits which might be considered to be "common" to the other Districts, there are only fanciful assertions that all the 1,400,000 International members of the Union will be put on notice that election improprieties will not be tolerated-as if all 1,400,000 such members really were in need of such notice; and further, that the election of Sadlowski would "willy-nilly" have been to the common benefit of the 1,400,000 members-if that benefit was in fact needed, or even that the intervenor's election might not actually have been detrimental to any of all these International members.
 
 
 18
 What is uncontravertedly obvious to me as a factfinder is that there is no evidence whatsoever that any District including District 31 was affected. If there had been any common benefit to the International or any other District, that evidence should have been presented in the case to make it manifest in order to base a judicial determination entitling the claimants to fees. Otherwise, the claimants required me as a factfinding judge to assume that their argument was a fact and not just a conclusion that the 1,400,000 International membership was commonly benefitted, and more so that the assumed common benefit was a reasonable basis for shifting the costs of the intervenor's campaign to the 1,400,000 International membership with "some precision to those benefitting." But there is no such factual persuasion of precision benefitting. Neither was there any factual persuasion of precision benefitting 126,000 members in District 31, because the claimants' activities were directed in the irrelevant financial path for procuring inadmissible evidence politically beneficial only to Sadlowski's potential, eventual election. Even here if such character of irregularities required notice to the membership, there is no evidence of that.
 
 
 19
 I find it impossible to extract from the evidence in this case as a whole any "substantial benefit on the members of an ascertainable class" bestowed by the claimants. Even with the election of Sadlowski as Director, there is no evidence of whether the District 31 membership were better or worse off with Sadlowski as Director.
 
 
 20
 District Court Opinion, App. Vol. V at 01587-89 and 01590. Consequently, the district court awarded no attorneys' fees.
 
 IV.
 THE PRESENT APPEAL
 
 21
 In Brennan, we instructed the district court to exercise its discretion in deciding whether the work performed by Sadlowski's counsel was for the common benefit of the rank and file members of District 31 and the Steelworkers in general. It exercised that discretion, and we are now asked to review the order of the district court denying attorneys' fees. We note that our standard of review is twofold. When reviewing the magistrate's and the district court's use of a strictly necessary standard to gauge whether counsel should be awarded fees, we will treat this holding as a conclusion of law and exercise plenary review. When considering the findings of fact as found below, we will use the clearly erroneous standard.
 
 
 22
 The appellants contend that the use of the strictly necessary standard is tantamount to applying a "but for" standard. They argue that
 
 
 23
 (t)o require, as the District Court would require, intervenor to prove that without his participation the Secretary would not have secured a rerun election is inconsistent with this Court's Sadlowski I (Brennan) decision; such a standard would impose a burden in the context of Title IV challenges which would be practically impossible to meet and would result in no fee recovering by intervenors, thereby emasculating any theoretical right to intervene.
 
 
 24
 Brief for Appellants at 19. We agree with the appellants that a strictly necessary or "but for" standard is inconsistent with Brennan.
 
 
 25
 In Brennan we quoted with approval the following language from Usery v. Local Union 639, International Brotherhood of Teamsters, 543 F.2d 369, 384 (D.C.Cir.1976), cert. denied sub nom., Local Union No. 639 v. Marshall, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977):
 
 
 26
 "It is not difficult to conceive of examples of material assistance to the Secretary and the court in vindication of the interest-of the public and the union rank and file-in union democracy ... (C)ounsel representing the intervenor may unearth material and even elusive evidence, or develop telling arguments in support of the Secretary's claims of illegality.... (T)he Trbovich (v. United Mine Workers, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686) court envisioned that intervenors would perform a role independent of the Secretary in helping the court fashion a suitable remedial order, and perhaps even assist the Secretary in supervising the conduct of the rerun.... (S)ound principle advises that error is more likely to be exposed when intervenors are able to secure competent counsel because of the prospect of recovering attorney's fees." (Footnotes omitted.)
 
 
 27
 Brennan, 554 F.2d at 595. We have concluded that the district court erred by applying a more rigid standard than that indicated by our decision in Brennan. Further, the magistrate's constant concern over whether the presence of counsel added anything to what Sadlowski could have done alone is in stark contrast to our admonition in Brennan that:
 
 
 28
 The agency and the intervenor perform truly different roles, with, in our view, considerably less overlap and waste than the district court found. The Department of Labor performs a quasi-judicial, rather than a purely adversarial role in Title IV cases. Its duty is to the public, its own policies, the union interest, and the individual. In deciding whether to institute suit, what to complain of, and what to settle for, the Secretary must constantly weigh competing interests and duties.... Considering the complexities of internal union remedies, complaint to the Secretary, and recourse to the courts, and the penalties for lack of legal or technical sophistication, we cannot believe that intervenors were intended to proceed pro se.
 
 
 29
 554 F.2d at 599. With the above principles of Brennan in mind, we will now proceed to review the appellants' efforts under the "common benefit" theory and the district court's holdings.
 
 A. EXHAUSTION OF UNION REMEDIES
 
 30
 As already noted the District 31 election took place on February 13, 1973. The returns were not complete until February 16. On the sixteenth, Sadlowski called Despres seeking his assistance in filing a protest with the union. Despres agreed to represent Sadlowski on February 17 and began working to gather information and evidence concerning election irregularities. The union's constitution required a protest to be filed with the International Tellers not later than 10 days after the election. Thus, Despres had only seven days from the time the election results were announced to file a protest in an election involving 300 locals and 130,000 members.
 
 
 31
 During the seven-day period, Despres alleges that he conducted the following activities:
 
 
 32
 Despres examined the union constitution and procedures, examined the applicable legal authorities, advised Sadlowski on the legal necessity to exhaust union procedures, interviewed Sadlowski, interviewed witnesses, advised Sadlowski associates who were interviewing witnesses, prepared statements and affidavits, gathered documents, put data in presentable form, prepared a draft of a protest of the election, conferred with Sadlowski and associates and revised the draft and conferred with Sadlowski about the protest generally and his conduct in relation to it.
 
 
 33
 Verified Application for Attorneys' Fees at 4. Despres continued to assist Sadlowski with his case as it proceeded through the Steelworkers' internal review and appeal procedures. This process was not completed until May 31, 1973, when the International Executive Board, chaired by Steelworkers' President Abel, denied Sadlowski's appeal and ended his recourse through the union's internal procedures.
 
 
 34
 The magistrate's and the district court's opinion of Despres' work during this time period can be seen in the district court's summarization and adoption of the magistrate's findings. The trial court found that:
 
 
 35
 1. In order to preserve issues for presentation to the Secretary, only minimal requirements are imposed; that these obligations could readily be fulfilled without the assistance of counsel; and that the assistance of counsel was not necessary to preserve matters for presentation to the Secretary.
 
 
 36
 App.Vol. V at 01597. We have already concluded that the district court applied the wrong standard for judging whether counsel should be granted fees. The LMRDA requires that the union member exhaust internal remedies before the Secretary can file suit, 29 U.S.C. § 482(a), and the Supreme Court has limited the Secretary's power to issues raised by the claimant. Hodgson v. Local Union 6799, USWA, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971). We now conclude that Despres' efforts from February 16 until the date of the final International Executive Board decision on May 31 are compensable if they were ultimately for the Steelworkers' "common benefit."
 
 
 37
 The "common benefit" to the Steelworkers of Despres' efforts on behalf of Sadlowski are clear. Without processing the protest through the Steelworkers' internal remedies, Sadlowski would have been foreclosed from going to the Department of Labor. While it may be true that an attorney's assistance was not absolutely necessary, as we wrote in Brennan :
 
 
 38
 quick action and skillful advocacy are probably most important at the initial stages of the enforcement scheme, when infractions must be identified, a bill of particulars formulated, the internal union procedures exhausted, and a complaint drafted for presentation to the Secretary. Prompt, thorough, and proper action in the earliest stages is essential to vindication of Title IV rights, since preservation of all election defects is a prerequisite to government intervention.
 
 
 39
 554 F.2d at 594. Absent Sadlowski's quick challenge to the election and Despres' legal assistance the Steelworkers would have been deprived of the candidate of their choice. We have no difficulty in concluding that all Steelworkers, but especially those in District 31, benefitted from the ultimate vindication of union democracy.
 
 
 40
 B. THE COMPLAINT FILED WITH THE SECRETARY OF LABOR
 
 
 41
 On June 25, 1973 Sadlowski filed a complaint with the Department of Labor totalling nearly 100 pages. Aided by the assistance of counsel, the complaint was specific, detailed and accompanied by supporting documentation. The chief trial attorney for the Department of Labor stated in an affidavit that Sadlowski's counsel had performed a valuable service both to his client and to the Department. Further, the compliance officer in charge of the investigation candidly conceded in a deposition that of the 64 locals investigated by his team 59 were selected on the basis of Sadlowski's complaint.
 
 
 42
 Again, as with the exhaustion of remedies work, the district court dismissed the efforts of Sadlowski's counsel "as not necessary to invest the Department with jurisdiction to investigate and ultimately to sue." We think that it was error not to consider the material assistance provided by counsel for Sadlowski. We have also concluded that Despres' efforts were a common benefit to the Steelworkers and a material assistance to the Department of Labor. Sadlowski's and Despres' efforts narrowed the issues for Labor and helped to isolate the specific problems with the election.
 
 C. LABOR'S DECISION TO BRING SUIT
 
 43
 After Sadlowski's complaint to Labor was filed on June 25, 1973, and after Labor completed its investigation in August, the district court granted Labor three extensions of its statutory deadline for deciding whether or not to initiate suit.[3] Sadlowski and Despres became concerned that union lobbying with the Department would result in no law suit being brought even though the investigation by Labor confirmed Sadlowski's allegations of election improprieties. Thus, they engaged Joseph L. Rauh, Jr., a prominent Washington, D. C. attorney experienced in LMRDA election proceedings, to carry their case forward within the Department.
 
 
 44
 Sadlowski's counsel, Despres and Rauh, argue that the Department of Labor performs a quasi-judicial role in Title IV cases and that Rauh's efforts in Washington were a necessary counter-balance to the adversarial posture taken by the union's lawyers. William J. Kilberg, then Solicitor for the Department of Labor, stated in an affidavit that after Labor's investigation the decision to sue was a foregone conclusion absent an agreeable settlement. The district court found that Kilberg's statement was representative of Labor's position and that the extensions granted to Labor "were for the purpose of allowing USW to investigate the election." App.Vol. V at 01597.
 
 
 45
 While we are inclined to disagree with the district court on the role of Rauh in moving the Department of Labor to action, we cannot say that the findings of fact on this issue are clearly erroneous. We will therefore affirm the district court's denial of attorneys' fees for work performed in an effort to urge Labor to file suit in district court.
 
 
 46
 D. SADLOWSKI'S INTERVENTION FROM FILING OF SUIT BY LABOR THROUGH THE SETTLEMENT PROCESS AND RERUN ELECTION
 
 
 47
 The Secretary of Labor instituted suit in the United States District Court for the Western District of Pennsylvania on November 8, 1973. On January 17, 1974, Sadlowski was granted leave to intervene. Local counsel was engaged in the person of Kenneth J. Yablonski and a fourth attorney, Judith Schneider, was hired to complete Sadlowski's legal team.
 
 
 48
 The gist of counsels' argument is that they took depositions, participated actively in settlement conferences by critiqueing proposed settlements and by making independent suggestions, and assisted in ensuring that the agreed upon rerun election was fair. We have no doubt that counsel worked very diligently throughout this entire period. However, we cannot say the district court's findings that counsels' work was either duplicative of the Secretary's or was rejected by the court are clearly erroneous. Furthermore, the work performed by counsel, although substantial, was at this stage of the process more for the benefit of a specific candidate, Sadlowski, than for the common benefit.[4] Thus, we will affirm the district court's denial of attorneys' fees for work performed during this period.
 
 V.
 THE COMMON BENEFIT
 
 49
 The common benefit from Sadlowski's drive to overturn a union election characterized by fraud is without doubt. The district court's finding that a new election, which ultimately produced a victory for Sadlowski, did not benefit the union members in general runs counter to the decisions of the Supreme Court and other circuits, to the clear principles of Brennan and to common sense. The district court by asking, "who desired the benefits from the settlement?" and then answering Sadlowski misconstrued the nature of the common benefit theory.
 
 
 50
 In Hall v. Cole, 412 U.S. 1, 8, 93 S.Ct. 1943, 1948, 36 L.Ed.2d 702 (1973), the Supreme Court noted that an individual, by vindicating his own right to free speech under Title I of the LMRDA, "dispels the 'chill' cast upon the rights of others." Brennan, 554 F.2d at 605. That the individual who brought suit also receives a direct personal benefit from it is of no matter when considering the " 'implications for the future conduct of the union's affairs.' " Hall, 412 U.S. at 8, 93 S.Ct. at 1948, quoting Yablonski v. United Mine Workers of America, 466 F.2d 424, 431 (D.C.Cir.1972), cert. denied, 412 U.S. 918, 93 S.Ct. 2729, 37 L.Ed.2d 144 (1973). The common benefit from dispelling a chill on free speech is exactly parallel to the common benefit Sadlowski conferred on the Steelworkers by insisting on a fair election.
 
 
 51
 More recently in Usery v. Local Union No. 639, 543 F.2d 369 (D.C.Cir.1976), cert. denied, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977), the District of Columbia Circuit considered the same attorney's fees issues in a Title IV challenge to a Teamsters' local election as our court did in Brennan. The Court noted that the LMRDA was passed by Congress in 1959 "(i)n response to findings of extensive corruption and improper fiscal and electoral practices by labor unions ...." Local Union No. 639 at 373. The Court examined the many common benefit cases under various titles of the LMRDA and concluded that, "the governing rationale was that union members by bringing suits against their union help vindicate the statutory policy in favor of union democracy which necessarily redounds to the benefit of the entire membership." Id. at 383. On remand, the district court awarded $35,000 in attorney's fees in part because "counsel vindicated important rights of Union members, i.e., the right to free and fair union elections and administration, and that they succeeded in establishing significant new principles of law ...." Marshall v. Local Union No. 639, Civil Action No. 1963-72 (D.C.C., Order of August 4, 1977) reprinted in App. C to Appellant's Brief at A. 10.
 
 
 52
 We have thus concluded that Sadlowski's counsel played a vital role in the statutory enforcement scheme of Title IV. Through the efforts of Despres, evidence was preserved and marshaled and a persuasive case was presented to the Secretary. The ultimate result of this work was a rerun election that Sadlowski won. This was more than a "fanciful assertion" of benefit and redounded to the common good of all steelworkers. Thus, it should be compensated accordingly. See Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973); and, Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976) (en banc ).
 
 VI.
 CONCLUSION
 
 53
 The order of the district court denying counsel attorney's fees for work performed in exhausting the union's internal procedures for challenging the election and in filing a complaint with the Secretary of Labor will be reversed. The district court's order will be affirmed insofar as it denied attorneys' fees for the period after the Secretary received the complaint and decided to institute the lawsuit which led to a settlement. We will therefore remand this case to the district court for a determination of the amount of attorney's fees to be awarded in accordance with this opinion and the opinions of our circuit pertaining to the fixing of fees.[5]
 
 
 
 [1]
 We recognize that in Brennan Judge Aldisert wrote a thoughtful and vigorous dissent. The closeness of the issue there is reflected by the fact that three United States Supreme Court Justices dissented from the denial of the Petition for Writ of Certiorari. Surprisingly, in its brief in support of the Petition for Certiorari, the Department of Labor failed to cite or make reference to Judge Aldisert's dissent. This opinion is not intended to be an intimation that Judge Aldisert has withdrawn from his view that an award of attorney's fees under Title IV of the LMRDA is not statutorily authorized. In his dissent, Judge Aldisert stated:
 In reviewing the accomplishments of appellant's able counsel, I have nothing but the highest praise for the excellence of their services. I quarrel only as to who should pay for those services. I believe that Title IV precludes an award of attorney's fees in this case, and even if it does not, I believe that this is not an appropriate case for an equitable award under the common benefit theory.
 Brennan, 554 F.2d at 615. However, the Brennan opinion is now the law of this case, and we must ascertain whether the district court's judgment after the remand is consistent with Brennan.
 
 
 [2]
 The text of the court's footnote 18 is as follows:
 See page 598 above. (referring to the court's detailed recitation of the efforts by Sadlowski's counsel) It is clear that some duplication of effort will always occur, since the Secretary must verify information relating to improper union conduct secured and supplied by an intervenor's counsel. Also, time limitations and exhaustion requirements of 29 U.S.C. § 482 and other provisions, may necessitate legal services on behalf of the Secretary as well as such services on behalf of the intervenor. In this case, the decision of the Secretary to terminate the investigation may have justified the continued efforts of counsel for the intervenor to document and preserve evidence of union misconduct. See Verified Application for Attorneys' Fees at 103a-104a.
 Brennan, 554 F.2d at 608-09 n.18.
 
 
 [3]
 Section 482(b) gives the Secretary 60 days from the filing of a complaint to institute a civil suit in district court if he or she finds probable cause to believe that an unremedied violation exists. 29 U.S.C. § 482(b)
 
 
 [4]
 Sadlowski later became a candidate for another union office seeking the post of International President in February, 1977. He lost this election to the union's officially endorsed candidate by a margin of 79,580 votes. See Sadlowski v. Marshall, 464 F.Supp. 858 (D.D.C.) (rejecting Sadlowski's challenge to the Department of Labor's refusal to bring suit to challenge the election), aff'd mem., No. 79-1461 (D.C.Cir.1979), cert. denied, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980)
 
 
 [5]
 Plaintiffs have requested that any remand be to a different judge and magistrate than the ones who have heard this case since its inception. While we will not rule that the case should be assigned to another district judge, we do suggest that whoever presides over this matter on remand, act expeditiously and hopefully not with excessive frugality. Counsel should not be penalized for winning an appeal with legal and factual arguments contrary to the district court's position or because someone might perceive counsels' style as abrasive. Counsel should always be compensated for the quality of their work and not on the trial judge's evaluation of counsels' affability. We are confident that on remand the district court will act expeditiously to award a proper fee based on the record before it that already adequately demonstrates the energies of counsel during the appropriate period