

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-18-1998

# Arcuri v. Trump Taj Mahal

Precedential or Non-Precedential:

Docket 96-5655

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Arcuri v. Trump Taj Mahal" (1998). *1998 Decisions*. Paper 30.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/30

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 18, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5655

JACQUELINE POLONSKI; OSCAR BERRIOS; MICHELE
BOYLE; NEIL BROWEN, SR.; JUDY LOWE-BROWN;
MARIA BUCHEL; DORI BYRNES; DONNA
CAMPO-POLKALSKI; JOANN CARMAN; STEPHANIE
POSTLEWAIT-CASTALDI; MICHELE COCOZZA; DORIS
SPIEGEL-CONTI; JEANNANNE DELUCA; NOELLE
DISOMMA; ELIZABETH J. ELLIS; SHARON FATATO;
JAMIE FELDMAN; TYLER FITZGERALD; CINDI FRANCO;
TRACEY GIERY; KATURAH GODARO; GUILLERMO
RIVERA; MICHAEL HAINSWORTH; SCOTT C. JOHNSON;
SANDRA LANCIERI; CATHERINE LIOSI; DEBRA LUPU;
RICHARD MARIN; IRENE MARTINEZ; KIM MEERSAND;
BEVERLY L. MIRANDA; LINA MONTECALVO; DIANE
MOOSHER; MURIEL NALE; VIVIAN NUTLIE; PATRICE
PINCHOCK; VINCE POMPILI; KATHLEEN QUINN;
DARLENE ROBINSON; THERESA SCHWEIGHARDT;
DENISE STAUFFENBERG; JULIE A. STRZMIECHNA;
SHARON TABASCO; SHARON TOCCO; KIM VINCI; SALLY
WEISDOCK; SHARON WOLF; ROBIN YOUSHAW
(hereinafter Cocktail Servers); MICHAEL RACO; VERONICA
WILSON; JOSEPH ANTONELLI; RICHARD FANTE; DANIEL
MORANIS; LOUIS NASTASI; RICHARD ROSEN; MAURICE
SHERROD; WILLIAM TRACY; JOHN WITHERS,
(hereinafter Bartenders)

v.

TRUMP TAJ MAHAL ASSOCIATES; LOCAL 54, OF THE
HOTEL EMPLOYEES RESTAURANT EMPLOYEES
INTERNATIONAL UNION (H.E.R.E.I.U.); ABC, INC., (a
fictitious name); JOHN DOE, (a fictitious name)

(D.C. Civil 91-cv-03014)

DOROTHEA A. ARCURI; PATRICIA BROOKS, VICTORIA
BRYANT; KAREN CARLINI; ROBERT DONOVAN; PHILIP K.
FERGUSON; NANCY GUERRERA; ROBERT HINGOS; LEE
A. KINSELL; CHARLES MCBRIDE; JUNE MCBRIDE;
ROSALIE MCCARTHY; MICHELE MCCARTNEY; JANET M.
MEDIO; LINDA MERANUS; GREGORY NATALE;
MARIANNE K. ORTZMAN; RONALD PAGANO; ANNA
MARIE PLATANIA; GERI SHANNON; DONALD SILANO;
JEANETTE SOPUCH; KENNETH W. STRAIN; TRASENA
TAUSO; ELIZABETH WALKER; VICTORIA WEGER;
RICHARD ZAK; JOANNE CAPETOLA; JOHN LASCOWSKI;
ADRIENNE M. PALERMO; MARY ANN PETERSON; SUSAN
PETRONE; BARRY L. WRIGHT

v.

TRUMP TAJ MAHAL ASSOCIATES; LOCAL 54, OF THE
HOTEL EMPLOYEES RESTAURANT EMPLOYEES
INTERNATIONAL UNION, (H.E.R.E.I.U.)

(D.C. Civil No. 91-cv-03529)

Local 54, Hotel Employees and Restaurant Employees
International Union,

        Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 9l-cv-03014 and No. 91-cv-03529)

Argued December 11, 1997

Before: GREENBERG, ROTH and SEITZ, Circuit Judges.

(Opinion Filed: February 18, 1998)

2

Richard G. Phillips, Esquire
Patrick C. Campbell, Jr., Esquire
  (ARGUED)
Richard G. Phillips Associates, P.C.
Mellon Bank Center
1735 Market Street, Suite 3420
Philadelphia, Pennsylvania 19103
 Attorneys for Appellees

Theodore M. Lieverman, Esquire
Robert F. O'Brien, Esquire
James Katz, Esquire (ARGUED)
Tomar, Simonoff, Adourian, O'Brien
 Kaplan, Jacoby & Graziano
20 Brace Road
Cherry Hill, New Jersey 08034
 Attorneys for Appellant
 Local 54 HERE

OPINION OF THE COURT

SEITZ, Circuit Judge.

Local 54 Hotel Employees and Restaurant Employees International Union ("the Union") appeals the district court's award of attorney's fees against it under the common benefit exception to the American rule limiting recovery.[1] We will review, under a plenary standard, the legal interpretation of the common benefit doctrine and whether the district court possessed the authority to apply it in a given factual setting. Marshall v. United Steelworkers, 666 F.2d 845, 849–50 (3d Cir. 1981).

_____

1. The district court exercised jurisdiction under section 301 of the Labor-Management Relations Act, 29 U.S.C. S 185, and federal question jurisdiction, 28 U.S.C. S 1331. We have jurisdiction under 28 U.S.C. S 1291 to consider the district court's final order awarding attorney's fees.

3

I. Facts and Procedural History

The facts of this case are undisputed. Between 1989 and
1990, the Union represented the food and beverage
employees of the Trump Castle, the Trump Plaza, and the
Trump Regency. In April of 1990, management of the newly
constructed Trump Taj Mahal failed to recognize the
seniority status of certain Union employees transferred
from the Trump Regency who were to be granted the
highest seniority status pursuant to a collective bargaining
agreement between the Union and Trump representatives.
As a result, the Union filed a grievance on behalf of the
former Trump Regency employees against the Taj Mahal.
This matter was submitted to binding arbitration and
resulted in an award sustaining the grievance and directing
the Trump Taj Mahal to establish seniority status for the
former Trump Regency employees. A group of Trump Taj
Mahal employees who were adversely affected by the
arbitration award ("the Polonski group") requested Trump
Taj Mahal to appeal, but no such action was taken.

By December of 1990, the U.S. Department of Justice
filed a civil RICO action against the Union and other
individuals in an unrelated matter. See United States v.
Hanley, Civil No. 90-5017 (D.N.J.). The court approved a
consent decree which provided for the resignation of the
Union's leadership and the appointment of a special
Monitor to oversee Union affairs. Shortly afterwards, the
Polonski group confronted the Monitor and alleged that the
previous arbitration award had been procured unfairly. The
Polonski group also filed suit against the Union in the
Superior Court of New Jersey, alleging a breach of the duty
of fair representation. This action was later removed to the
district court.

In view of these events, the Monitor sought to reopen the
arbitration award and submit the entire matter to the
arbitrator for redisposition. By August of 1991, the group of
employees who benefitted from the arbitration award ("the
Arcuri group") filed suit in the district court against the
Union and the Trump Taj Mahal.2 These plaintiffs sought

_____

2. This action was consolidated in the district court with the Polonski
lawsuit. However, on June 10, 1994, the district court dismissed the
Polonski action for failure to provide discovery. That order is not being
appealed.

4

damages for the Union's breach of the duty of fair representation, and moved to temporarily enjoin the Monitor from attempting to have the arbitration award reopened. After the Union represented that it would not seek to reopen the award, the Arcuri group withdrew their motion for a preliminary injunction, and continued their litigation against the Union for a breach of the duty of fair representation.3

Upon cross-motions for summary judgment, the district court held that the Monitor had in fact breached his duty of fair representation by attempting to reopen the arbitration in an arbitrary manner. The court, on September 30, 1994, ordered the Union to pay attorney's fees as damages caused by the Union's violation of the labor laws. The matter was subsequently referred to a magistrate judge to determine the appropriate amount of attorney's fees and costs.

However, by order dated August 1, 1995, the district court reversed its position and held that the plaintiffs were not entitled to attorney's fees as damages under the labor laws. Instead, the court allowed the plaintiffs to recover under the common benefit doctrine all attorney's fees for aspects of the litigation in which they prevailed. 4 The case was once again referred to the magistrate judge, who recommended a total award of $103,566.30 in attorney's fees and costs. On September 27, 1996, the district court adopted the magistrate judge's recommendation. The Union now appeals the district court orders allowing attorney's fees under the common benefit doctrine and adopting the magistrate judge's ultimate recommendation as the appropriate amount of fees and costs.

_____

3. The Monitor nevertheless held an evidentiary hearing to consider the Polonski group's grievances against the arbitration award. On April 6, 1992, the Monitor eventually issued a decision in favor of the Arcuri group and upheld the award.

4. These two orders were appealed by the Union on May 16, 1996. This court dismissed those appeals as untimely. See Polonski, et al. v. Trump Taj Mahal, et al., Nos. 96-5291, 96-5347 (3d Cir. May 23, 1997) (judgment order).

II. Jurisdiction of This Court

At the outset, the plaintiffs question the jurisdiction of this court to consider the August 1, 1995 order allowing attorney's fees under the common benefit doctrine. They assert that the Union had previously appealed that order, in addition to the September 30, 1994 order, and this court had dismissed those appeals as untimely under Fed. R. App. P. 4(a)(1). From this, we understand the plaintiffs to make a two-fold argument. They first contend that our prior dismissal renders all matters relating to that appeal final and conclusive. Second, they seem to make the argument that the Union's notice of appeal had only mentioned the district court's final September 27, 1996, order adopting the magistrate judge's recommendation as to attorney's fees under the common benefit doctrine. Because the Union did not include in its notice of appeal the August 1, 1995 order, plaintiffs contend that we have no jurisdiction to consider that order.

The plaintiff's first argument -- that the appeal of the common benefit issue is precluded by our dismissal of the Union's prior appeal -- is meritless. It is well established in our court that an appeal from an order granting attorney's fees is not final unless reduced to an identifiable amount. Pennsylvania v. Flaherty, 983 F.2d 1267, 1276-77 (3d Cir. 1993). It goes without saying that a dismissal of a premature attorney's fees appeal carries no res judicata effect, as this court could not have exercised jurisdiction to consider the appeal. With some exceptions not applicable here, this court will only consider an appeal from an attorney's fee determination when it becomes final. See id. Thus, the dismissal of the Union's premature appeal of the August 1, 1995 order does not bar our consideration of the issue at this time.

Plaintiffs' second contention -- that the Union's failure to explicitly include in its notice of appeal the August 1 order granting attorney's fees -- is also without force. While Fed. R. App. P. 3(c) does provide that the notice of appeal must "designate the judgment, order, or part thereof appealed from," an appeal from a final judgment that is identified in the notice will draw into question all non-final orders and rulings which produced the judgment. Elfman Motors, Inc.

6

v. Chrysler Corp., 567 F.2d 1252, 1253 (3d Cir. 1977) (per curiam). It is almost axiomatic that decisions on the merits are not to be avoided on grounds of technical violations of procedural rules, see Foman v. Davis, 371 U.S. 178, 181-82 (1962), and we have read notices of appeal liberally. See CTC Imports and Exports v. Nigerian Petroleum Corp., 951 F.2d 573, 576 (3d Cir. 1991). Such treatment is particularly appropriate where the order appealed is discretionary and relates back to the judgment sought to be reviewed. Elfman Motors, 567 F.2d at 1254.

This court will exercise appellate jurisdiction over orders that are not specified in the notice of appeal where: (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues. See MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1092 (3d Cir. 1995) (citations and internal quotations omitted), cert. denied, 117 S. Ct. 64 (1996); Lusardi v. Xerox Corp., 975 F.2d 964, 972 (3d Cir. 1992); Williams v. Guzzardi, 875 F.2d 46, 49 (3d Cir. 1989). In the attorney's fee context, this court has found that "an adequate connection exists between a specified order that designates the prevailing party for purposes of attorney's fees and an unspecified order that quantifies the attorney's fee award." MCI Telecommunications, 71 F.3d at 1093. Similarly, where "subsequent appellate proceedings manifest the appellant's intent to appeal the attorney's fees issue," and where "the opposing party had and exercised a full opportunity to brief the issue and did not raise any claim of prejudice," this Court has found a notice of appeal specifying one attorney's fee order sufficient to confer jurisdiction over an appeal from another unspecified attorney's fee order in the same case. Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 156 n.10 (3d cir. 1994). In this case, the earlier attorney's fee order was connected to the order specified in the notice of appeal in that the earlier order established the legal basis for the award of fees that was reduced to a final amount in the specified order. The appellate proceedings clearly manifest an intent to appeal the common benefit issue decided in the first order, and there is no prejudice since both parties have fully briefed the issues. Accordingly, we

7

find the notice of appeal from the September 27, 1996 final order adopting the magistrate judge's fee recommendation sufficient to confer jurisdiction over the appeal from the earlier order granting attorney's fees under the common benefit exception.

III. The Common Benefit Doctrine

A. Requirements for Applicability

We now turn to the merits of this appeal. By way of background, it is well established that the traditional American rule disfavors the award of attorney's fees in the absence of statutory or contractual authorization. Summit Valley Indus., Inc. v. Local 112, United Bhd. of Carpenters and Joiners, 456 U.S. 717, 721 (1982). Under the exercise of its equitable powers, however, a federal court may fashion an attorney's fees award to successful litigants who confer a common benefit upon a class of individuals not participating in the litigation. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-92 (1970). At the heart of this exception is a concern for fairness and unjust enrichment; the law will not reward those who reap the substantial benefits of litigation without participating in its costs. As explained by the Supreme Court, "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." Id. at 392. The origins of this doctrine can be traced to the common fund rule whereby those who share in a fund must participate in paying attorney's fees when a prevailing plaintiff 's litigation redounds to the benefit of the common fund. See Hall v. Cole, 412 U.S. 1, 5 n.7 (1972); 1 Dan B. Dobbs, Law of Remedies S 3.10(2) (2d ed. 1993).

Under the common benefit doctrine, an award of attorney's fees is appropriate where "the plaintiff's successful litigation confers `a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.' " Hall, 412 U.S. at 5 (quoting

8

Mills, 396 U.S. at 393–94). This test entails satisfying three distinct elements: (1) the plaintiff must confer a substantial benefit; (2) to members of an ascertainable class; and (3) the court must ensure that the costs are proportionally spread among that class. Because this test may be read literally to include every lawsuit against any institutional defendant, we have refined this language further. In Marshall v. United Steelworkers, 666 F.2d 845, 848 (3d Cir. 1981), this court inquired: (1) whether the benefits may be traced with some accuracy; (2) whether the class of beneficiaries are readily identifiable; and, (3) whether there is a reasonable basis for confidence that the costs may be shifted with some precision to those benefitting.

B. The Arguments

In examining the applicability of the common benefit doctrine, the district court recounted the Mills test of substantial benefit, commonality, and apportionment. The court stated without comment that the plaintiffs satisfied the last two elements of commonality and apportionment. As to substantial benefit, the court reasoned that the plaintiffs, through their lawsuit, taught the Union a "generalized lesson" that it should respect the finality of arbitration. Because all Union members would benefit from the Union's respect for the law, the district court concluded that there was indeed a common benefit which mandated fee shifting to achieve equity.

The Union on appeal initially argues that the common benefit doctrine cannot apply to fair representation actions under the labor laws. The Union's argument here is that duty of fair representation cases "are no different in conception from a lawsuit by a person injured in a motor vehicle accident." Br. at 18. In the Union's view, to award attorney's fees in these types of cases would constitute a derogation of the American rule because these actions, like negligence claims, are not well suited to vindicate public rights.

In the alternative, the Union posits that none of the Mills common benefit elements are met in this case. There was no substantial benefit, the Union contends, because the

9

plaintiffs' litigation was not a "general vindication" of Union members' rights. Even if there were a benefit, the Union argues that it was not a common one because the plaintiffs benefitted by vindicating their own seniority rights, and the other Union members did not stand to share that benefit in common with the plaintiffs, as their seniority interests were in fact adverse to the plaintiffs. Finally, the Union notes that there would be no way to achieve true apportionment in this case because attorney's fees would come out of Union funds to which all members contribute pro rata, yet all Union members would not benefit equally from the litigation.

The plaintiffs, on the other hand, argue that their litigation against the Union had established a violation of fair representation duties owed to them under the labor laws. From this, they assert that a substantial benefit has been rendered to all Union members through the vindication of this legal right. They consequently conclude that fee-shifting under the common benefit doctrine is appropriate in this case.

C. The Test Applied

In order to determine the availability of attorney's fees under the common benefit doctrine, this court must apply the three part test announced in Mills and its progeny. We cannot accept the Union's argument that fair representation cases cannot form the basis for attorney's fees under this theory of fee-shifting. As we have previously stated, the common benefit doctrine stems from an inherent power to fashion equitable relief, and we have not hesitated to summon this authority where "overriding considerations indicate the need for such a recovery." Brennan v. United Steelworkers, 554 F.2d 586, 600 (3d Cir. 1977) (quoting Mills, 396 U.S. at 391-92). Application of the doctrine is not predicated upon the type of action sustained, but depends instead on the equitable circumstances of each case. Indeed, the Supreme Court and lower federal courts have applied the doctrine in a myriad of circumstances without announcing absolutes regarding applicability. See 1 Mary F. Derfner & Arthur D. Wolf, Court Awarded Attorney Fees P 3.01[5] (1997)

10

(surveying cases). We will accordingly apply each of the Mills criteria to examine whether the district court possessed the legal authority in the present context to award attorney's fees under the common benefit doctrine.

The first element to be analyzed is the existence of a "substantial benefit" common to all class members that may be traced with some accuracy. We have previously held that attorney's fees may be proper even though the benefit conferred is nonpecuniary in nature. Merola v. Atlantic Richfield Co., 515 F.2d 165, 169-70 (3d Cir. 1975). As Mills makes clear, "[t]he fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale." 396 U.S. at 392. What is of utmost importance here is the nature and quality of the common benefits attained from litigation rather than any particular quantification into dollar amounts. As a result, the fact that the plaintiffs did not procure damages in their action against the Union is inapposite to our analysis and would not, on its own, preclude fee-shifting under the common benefit doctrine.

However, federal courts must scrutinize the benefits conferred from litigation carefully, lest the doctrine overwhelm the American rule that each party is to bear its own litigation costs. The general policy is that attorney's fees should be awarded "in limited circumstances" absent a fee-shifting statute or contract. Alyeska Pipeline, 421 U.S. at 257-58; see also Aguinaga v. United Food and Commercial Workers Int'l Union, 993 F.2d 1480, 1485 (10th Cir. 1993). In this regard, the mere vindication of a legal right by one class member is not necessarily a substantial benefit that would trigger the application of the doctrine. See, e.g., Crane Co. v. American Standard, Inc., 603 F.2d 244, 255 (2d Cir. 1979); Bailey v. Meister Brau, Inc., 535 F.2d 982, 995-96 (7th Cir. 1976). The Supreme Court illustrated this principle in exploring the substantial benefits gained from a shareholders derivative suit brought to challenge a violation of the securities laws:

> [A] substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an

11

> abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest.

Mills, 396 U.S. at 396 (quoting Bosch v. Meeker Cooperative Light and Power Ass'n, 257 Minn. 362, 366, 101 N.W.2d 423, 427 (1960)). More specifically, a common benefit is substantial where, by vindicating the important statutory policy at issue, the plaintiff has rendered a "substantial service" to all members of the class. Id. This substantial service is typically one that not only corrects an abuse prejudicial to an essential right, but also impacts the future conduct of the defendant's affairs. Hall, 412 U.S. at 8 (quoting Yablonski v. United Mine Workers, 466 F.2d 424, 431 (D.C. App. 1972)). Were the rule otherwise, any legal victory over an institutional defendant by one of its members would lead to fee shifting through the common benefit doctrine. See 1 Dobbs, supra, S 3.10(2). Indeed, the narrowly tailored common benefit exception might provide an impermissible back door to the "private attorney general" framework that was rejected in Alyeska Pipeline. See Alyeska Pipeline, 421 U.S. at 264 n.39; Shimman v. International Union of Operating Eng'r, Local 18, 744 F.2d 1226, 1235 n.13 (6th Cir. 1984); Bailey, 535 F.2d at 995–96;

We take particular guidance from the Supreme Court's decision in Hall itself, which considered the common benefit doctrine in the context of a dispute between Union members and Union leadership. The plaintiff in Hall received reinstatement to the Union after he was discharged pursuant to a Union rule proscribing "deliberate or malicious vilification with regard to the execution or the duties of any office or job." Hall, 412 U.S. at 3. In considering the same Mills factors pertinent to our discussion here, the Court identified the main purpose of the statute at issue and whether the plaintiff 's litigation, by vindicating the relevant statutory policies, rendered a substantial service to an ascertainable class. Hall, 412 U.S. at 8. The Court reasoned that the lawsuit had vindicated an important free speech right, which "necessarily rendered a substantial service to [the] Union as an institution and to

12

all of its members." Id. In particular, the successful plaintiff had dispelled a "chill" cast upon the free speech rights of all Union members by invalidating a Union rule that was found repugnant to the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"). Thus, fee shifting in that case was appropriate under the common benefit doctrine.

In Brennan v. United Steelworkers, 554 F.2d 586 (3d Cir. 1977), this court extended that principle to voting rights violations under the LMRDA. We initially noted that the LMRDA "was intended to provide union members with protection from the type of attempts to thwart the wishes of union members and impair union democracy." Id. at 601. Given the facts before us in Brennan, we had little doubt that the types of voting violations evident in that case would spread to other Union districts and ultimately render union democracy nothing more than a hollow promise. Id. at 605. Because the plaintiff's lawsuit in Brennan contributed to the vindication of the entire democratic process and necessarily redounded to the benefit of the whole union, we held that fee-shifting was particularly applicable.

Applying these principles, we find that the district court erred in its legal conclusion that all Union members derived a substantial benefit from the Union's receiving a "generalized lesson" that an arbitrator may not reconsider the merits of a final arbitration award. Simple "generalized lessons" of well-established law are not substantial benefits that form the basis of fee shifting. Otherwise, whenever a defendant violates a right common to all its membership, fee shifting would be appropriate without any inquiry into the nature of the "substantial service" rendered to those who will ultimately pay for the litigation. This has never been the analysis and equity will not hinge on a result that is merely "technical in nature." Mills, 396 U.S. at 396.

There is little doubt that plaintiffs' litigation conferred a substantial benefit among some of those involved in the internal seniority dispute between Union factions. The Arcuri group of Union members directly benefited from the outcome in that it prevented the Union from attempting to reopen a favorable arbitration award and procured a judgment that it was not being treated fairly as required

13

under the duty of fair representation. But this alone cannot be the basis of fee shifting under the common benefit doctrine because the plaintiffs seek to collect fees from the Union treasury, which necessarily implies that all Union members must have benefitted from the litigation.

Here, we cannot see what substantial benefits redounded to the benefit of all the Union members. This is not a case where the plaintiffs' litigation corrected a "deceit practiced on the stockholders as a group," as was evident in Mills itself. 396 U.S. at 392 (quoting J.I. Case Co. v. Borak, 377 U.S. 426, 432 (1964)). Nor did the successful litigants realistically dispel any "chill" associated with a Union abuse prejudicial to the enjoyment of essential rights by the entire Union membership. This dispute between Union factions can hardly be analogized to Hall and its progeny, where violations of first amendment or voting rights necessarily resulted in an immediate harm to the promise of Union democracy or the freedom of expression. Similarly, the lawsuit did not "establish[ ] significant new principles of law" beneficial to all Union members. Marshall v. United Steelworkers, 666 F.2d 845, 853 (3d Cir. 1981).

In the end, nothing in the present litigation indicates a "substantial service" rendered to the entire Union membership such as would justify an equitable award of attorney's fees. All the facts before us indicate that the internal seniority grievances among Union members directly at odds with each other had no broader implications to those completely divorced from the context of the dispute. The record cannot fairly support a legal conclusion that the Union's attempt to reopen arbitration was a practice that threatened "the enjoyment or protection of an essential right" to the entire Union's interest. Mills, 396 U.S. at 396. Nor can we see how fee shifting in the present case would establish a policy that would "encourage unions to more zealously represent employees' interests." Cruz v. Local Union No. 3 Of the Int'l Brotherhood of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). It is important to emphasize that the logic underlying the common benefit doctrine is restitutionary in nature, not punitive or limited to labor policy. Hall, 412 U.S. at 6–7. Union members here would not be unjustly enriched at the plaintiffs' expense.

14

Accordingly, we will reverse the district court's attorney's fee award under the common benefit doctrine. Because we hold that the district court did not possess the authority to shift fees, we need not reach the validity of the precise amount recommended by the magistrate judge and adopted by the district court.

IV. Conclusion

For the foregoing reasons, we will reverse the district court order granting attorney's fees.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

15