No. 77–643.   UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC v. SADLOWSKI ET AL.   C. A. 3d Cir.   Certiorari denied.

MR. JUSTICE WHITE, with whom MR. JUSTICE STEWART and MR. JUSTICE REHNQUIST join, dissenting.

The Court's action today lets stand the ruling by a panel of the Court of Appeals for the Third Circuit that attorney's fees are awardable to intervenors in union election challenges processed under Title IV of the Labor Management Reporting and Disclosure Act (LMRDA), 73 Stat. 532, 29 U. S. C. § 481 et seq.   The issues presented in this case are of serious importance to the proper enforcement of the LMRDA, and also to the prosecution generally of private claims that benefit a broad class of persons.

The decision below rested on two necessary foundations: that the scheme of Title IV of the LMRDA did not foreclose the awarding of attorney's fees to intervenors, and that the "common benefit" exception to the American rule against awarding attorney's fees could fairly be applied to a case of intervention under Title IV such as occurred here.

In Trbovich v. Mine Workers, 404 U. S. 528 (1972), this Court held that intervention by an individual union member whose initial complaint commenced the challenge to the election was not inimical to the LMRDA.   Title IV anticipates that objections to the conduct of union elections be initiated by union members filing a complaint with the Secretary of Labor after exhausting union remedies.   Thereupon, however, it is the exclusive province of the Secretary to commence a civil action in federal district court.   29 U. S. C. § 482 (b). Trbovich held that the union member who initiated the challenge might still intervene in the federal suit, "so long as that intervention is limited to the claims of illegality presented

by the Secretary's complaint." *Trbovich, supra,* at 537. This conclusion represented a very careful balance between Title IV's commitment of enforcement authority to the Secretary's sole discretion, and a recognition that the union member who originally raised the complaint might wish to see his claims pressed in some manner different from that of the Secretary.

The opinion below threatens to upset that delicate compromise. Intervention by union members in support of the Secretary's grounds of complaint was upheld in *Trbovich* only because it would make the union liable "to relatively little additional burden," and would "not subject the union to burdensome multiple litigation, nor will it compel the union to respond to a new and potentially groundless suit." *Trbovich, supra,* at 536. Once attorney's fees are assessable against a union on behalf of intervenors, however, the union has indeed become liable to an "additional burden" that could be quite costly. And the adjudication of whether an intervenor has contributed significantly to the common benefit of all union members could well involve the "burdensome multiple litigation" that the restrictions on intervention imposed by *Trbovich* were intended to avoid.

Although not controlling, the Secretary of Labor's views should also be considered in any matter concerning the proper enforcement of the Act he is to administer. It is significant, therefore, that the Secretary has in this case broken his silence on the attorney's fees question for the first time. It is the position of the Secretary that the awarding of attorney's fees to intervenors "significantly impedes the effective enforcement of Title IV."*

The other holding below, that intervention in such a case as

---

*Memorandum on Behalf of Secretary of Labor 2. The Secretary believes that the availability of attorney's fees will encourage excessive intervention since, no matter how great or small the assistance an individual might have provided the Secretary, it is only by intervening that he can hope to receive compensation.

this contributes to the "common benefit" of the group to be assessed the attorney's fees, raises problems of its own. A judge-made exception to the traditional American rule against awarding attorney's fees, the "common benefit" theory is premised on a court's equity power to allocate a portion of a fund won for a class of persons through the efforts of a single person to compensate that single person. See *Hall* v. *Cole*, 412 U. S. 1, 5 n. 7 (1973). Subsequent elaboration extended the early theory to cases where no single class of persons was suing, *Sprague* v. *Ticonic Nat. Bank*, 307 U. S. 161 (1939), and to cases involving a common benefit other than a tangible pool of assets. *Mills* v. *Electric Auto-Lite Co.*, 396 U. S. 375 (1970); *Hall* v. *Cole, supra.*

The contribution made by an individual union member, however, who intervenes in an action brought by the Secretary of Labor, can only with great difficulty be viewed as the creation of a common benefit. The Secretary has already investigated the case, and is already conducting the suit. And the rationale permitting intervention was not to duplicate the efforts of the Secretary. Intervention was held permissible in *Trbovich* in order to protect a union member's interest, or his choice of how to represent that interest, precisely to the extent that the individual's interest *diverged* from the Secretary's. The Secretary is the champion of the " 'vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member.' " *Trbovich, supra,* at 539, citing *Wirtz* v. *Glass Bottle Blowers,* 389 U. S. 463, 475 (1968). Hence, the rationale that provides for the right to intervene in the first place substantially undercuts the intervenor's claim to be creating a significant *common* benefit not already provided by the Secretary.

The Third Circuit panel, in adopting a common-benefit theory, correctly observed that our opinion in *Alyeska Pipeline Co.* v. *Wilderness Society,* 421 U. S. 240 (1975), recognized the continuing vitality of that theory. More questionable, however, is whether the court below took proper account of

*Alyeska*'s explanation of the antedating opinions that applied a common-benefit theory:

"In this Court's common-fund and common-benefit decisions, the classes of beneficiaries were small in number and easily identifiable. The benefits could be traced with some accuracy, and there was reason for confidence that the costs could indeed be shifted with some exactitude to those benefiting." *Id.*, at 265 n. 39.

The intervenor's contribution admittedly need not be the provision of a monetary sum. However, the lower court's reasoning that a new election in a single district benefited the entire membership of the United Steelworkers of America in such an identifiable and proportionate way as to justify burdening the entire membership with the intervenor's attorney's fees represents logic squarely at issue with *Alyeska*'s construction of the common-benefit theory.

Both holdings of the lower court appear to conflict with this Court's decisions. The awarding of attorney's fees to intervenors in Title IV proceedings threatens seriously to obstruct the administration of the LMRDA. The common-benefit exception has in this case been stretched beyond the bounds of its creative rationale, both as to whether a benefit has been shown to exist at all, given the Secretary's dominant enforcement role, and as to whether it is fair to tax the entire union with the costs of providing what benefit there might be. I would grant certiorari to resolve these important issues affecting the administration of the LMRDA and the conduct of all common-benefit litigation.