**Jesse COLPO, Plaintiff,**

v.

**GENERAL TEAMSTERS LOCAL UNION 326 OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.**

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL 326, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.**

Civ. A. Nos. 79–514, 80–181.

United States District Court,
D. Delaware.

Feb. 1, 1982.

Roderick R. McKelvie, James McC. Geddes, Robinson, McKelvie & Geddes, Wilmington, Del., Attys., for plaintiff Colpo.

Joseph J. Farnan, Jr., U. S. Atty., John X. Denney, Jr., Asst. U. S. Atty., Wilmington, Del., Edward T. Ellis, U. S. Dept. of Labor, Philadelphia, Pa., for plaintiff Donovan.

Thomas L. Little, Wilmington, Del., for defendant Local 326.

STAPLETON, District Judge:

These consolidated actions on behalf of Jesse Colpo, a member of Local 326, and the Secretary of Labor, arise under Title I and Title IV of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401, *et seq.*, Pub.L. 86–257, 73 Stat. 519 (1959), respectively. Both suits involve the Local's decision to disqualify Colpo as a candidate in an election for Local President held on November 4 and 5, 1979 because of his arrearage in dues payments.

The Court entered judgment for the Local on Colpo's allegation that it discriminated against him in the application of its "good standing" requirement, in violation of LMRDA § 101(a)(1), 29 U.S.C. § 411(a)(1), and on the Secretary's conten-

tion that the Local's practice of "collapsing" dues payments—crediting current payments to a previous month's arrears—was "unreasonable" under 29 U.S.C. § 481(e). 504 F.Supp. 573 (D.Del.1980), aff'd 659 F.2d 399 (3d Cir. 1981). The Secretary prevailed, however, on a second theory under Section 481(e) of the LMRDA. The Court construed that Section to protect the voting and candidacy rights of Union members who have authorized the withholding of dues payments, if the employer fails to make the deduction as required by a collective bargaining agreement. Accordingly, the Court vacated the November 1979 election in which Colpo was not a candidate and ordered the Local to hold a new election.

Colpo was defeated in the second vote, and the Secretary of Labor certified the results. On September 9, 1981, this Court entered a Final Judgment in the consolidated action.[1]

Now before the Court is Colpo's motion for the award of counsel fees in recognition of the "common benefit" he has conferred upon the membership of the Local. My analysis of this motion, and the evidence submitted in its support, relies upon the Third Circuit's recent opinion in *Marshall v. United Steelworkers of America*, 666 F.2d 845, (3d Cir. 1981).[2]

## I. COUNSEL FEES AND TITLE IV.

In *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), the Supreme Court endorsed the award of counsel fees to prevailing litigants in actions under Title I of the LMRDA as part of the inherent equitable powers of the federal courts, *id.* at 5, 93 S.Ct. at 1946. "To allow the others to ob-

tain full benefits from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Id.* at 6, 93 S.Ct. at 1946, *quoting Mills v. Electric Auto Lite*, 396 U.S. 375, 392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970). Furthermore, the power to award fees was necessary to enable aggrieved union members to finance litigation to protect their rights under the LMRDA. *Id.* at 13–14, 93 S.Ct. at 1950.

In *Brennan v. United Steelworkers of America, supra*, the Court of Appeals applied the *Hall v. Cole* rationale to union members intervening in Title IV suits under the authority of *Trbovich v. United Mine Workers*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). Although recognizing the limited scope of the intervention contemplated by *Trbovich*, the Third Circuit found that Title IV enforcement, like Title I, depended upon "quick action and skillful advocacy" on behalf of aggrieved union members. 554 F.2d at 594. *Brennan* identified at least five ways in which a plaintiff-intervenor may confer a benefit on other union members in a Title IV action: (1) the exhaustion of internal union procedures; (2) preparation of a complaint and supporting evidence for presentation to the Secretary; (3) the development of additional evidence for presentation at trial; (4) assistance in fashioning an appropriate remedial order; (5) assistance to the Secretary in supervising a new election. *See* 554 F.2d at 594–95. In *Marshall v. United Steelworkers, supra*, the Third Circuit reaffirmed its holding in *Brennan* that the Title IV enforcement scheme did not preclude the equitable award of counsel fees,[3] and

---

**1.** The Court relieved Colpo from the effects of the final judgment for purposes of his formal motion to intervene and for the award of counsel fees for the reasons stated in its Memorandum Opinion filed on December 10, 1981.

**2.** Reviewing an award of fees upon remand from the Court's decision in *Brennan v. United Steelworkers of America*, 554 F.2d 586 (3d Cir. 1977), *cert. denied*, 435 U.S. 977, 98 S.Ct. 1627, 56 L.Ed.2d 71 (1978).

**3.** *But see, United Steelworkers of America v. Sadlowski*, 435 U.S. 977, 98 S.Ct. 1627, 56

L.Ed.2d 71 (1978) (White, J. dissenting from denial of *cert.*) and 434 U.S. 1044, 98 S.Ct. 887, 54 L.Ed.2d 795, (Rehnquist, Stewart, JJ. dissenting from denial of *cert.*). *Brennan* adopted the conclusion of the D.C. Circuit in *Usery v. Local 639*, 543 F.2d 369 (D.C. Cir. 1976) *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977). The Ninth Circuit recently authorized the award of fees in a Title IV case based upon an acknowledgement of the intervenor's "ongoing and vital assistance" by the Secretary of Labor. *Donovan v. Local Union 70*, 661 F.2d

rejected the "but for" standard to prove common benefit. At 849–850. Rather than proving that his assistance was "strictly necessary" to achieve the beneficial result, Colpo need only establish that the work performed by his counsel was of "material assistance" to the Secretary in producing an outcome of benefit to the membership of Local 326.

## II.  MATERIAL ASSISTANCE.

Colpo has reduced his original application for counsel fees by over 40%, recognizing that he is not entitled to fees related exclusively to his unsuccessful Title I claim. In deciding whether the remaining claims are compensable under the law in this Circuit, I must consider the extent to which the work they represent materially aided the Secretary of Labor in the prosecution of the theory of liability on which he ultimately prevailed.[4]

### A.  *Exhaustion Of Union And Administrative Remedies.*

Jesse Colpo sought legal assistance after he learned that he had been disqualified from running in the November 1979 election. He retained Roderick McKelvie as his counsel on October 26, 1979. McKelvie attests that he researched Colpo's legal options, and advised him to pursue both a private action under Title I of the LMRDA and administrative remedies under Title IV. To preserve his rights under Title IV, by exhausting his internal union remedies, Colpo wrote to Frank Fitzsimmons, President of the International Union, to appeal his disqualification on October 26. Counsel simultaneously began work on an affidavit to be submitted to the Department of Labor in support of Colpo's Title IV administrative complaint. The complaint filed with the Secretary on February 1, 1980 was thorough and extensive. This groundwork reduced the scope of the Department of Labor investigation needed to evaluate wheth-

er to proceed with a civil action under Title IV.

As the Court wrote in *Brennan, supra* :

Prompt, thorough, and proper action in the earliest stages is essential to the vindication of Title IV rights, since preservation of all election defects is a prerequisite to government intervention. The Secretary may not seek to void an election on bases not raised in "some discernable fashion" by the complainant before the union, or which the union did not have a fair opportunity to consider and redress. The clear effect of Title IV is to make the Secretary dependent upon the diligence of the union member. The Secretary's very authority to sue derives from the union member's pursuit of Title IV remedies and subsequent formal filing of a complaint with the Secretary.

554 F.2d at 595. I conclude that Colpo's preservation of the Title IV claim for the Secretary's review, and his thorough presentation of the relevant facts were of material assistance to the Department of Labor and are, therefore, compensable under this Court's equitable powers.

### B.  *Discovery And Investigation.*

Colpo's attorneys conducted an extensive investigation of the facts surrounding the dues payment Colpo missed in December 1976. This investigation revealed that Colpo had worked for Interstate Motor Freight Systems at its Wilmington terminal during the month of December 1976; that he had authorized Interstate to deduct his Local 326 dues payment from his wages; that the Local included Colpo's name on the dues checkoff list for that month; that the collective bargaining agreement between Interstate and the Local required the employer to deduct Colpo's dues and pay them over to the Union; and that Interstate failed to make the required deduction and payment by mistake. All of this information, al-

---

1199, 1203 (9th Cir. 1981). Only one court, to my knowledge, has rejected the *Brennan* analysis. *Marshall v. Int'l. Brhood of Teamsters, Local Union No. 20,* 509 F.Supp. 926 (N.D.Ohio 1981).

4.  Work exclusively in support of the theory that Local 326's dues accounting system is unreasonable under Section 481(e) is not compensable.

though eventually stipulated to at trial, was critical to establishing the Secretary's standing to challenge Colpo's disqualification under Section 481(e). It also corrected erroneous information the Secretary obtained from the Department's Grand Rapids, Michigan Field Office. At the evidentiary hearing in this matter, Edward Ellis, an attorney for the Secretary, agreed that Colpo's investigative work, especially the deposition of James Stephens, was valuable and saved the Secretary considerable time, effort and expense. Also helpful in clarifying the Union's structure and accounting practices were Colpo's depositions of two Local Union officials, Thomas Byron and William Ziegler.

Colpo has shown that he rendered material assistance to the Secretary in taking the Byron, Ziegler and Stephens depositions, and in investigating Interstate's non-payment of the December 1976 dues. Ellis could not recall any other discovery material turned over by Colpo, however, which was particularly helpful to preparation of the Secretary's Title IV case. The recovery for time spent in discovery and investigation will be limited accordingly.

### C. Pre-Trial Order.

Colpo has submitted a claim for time and expenses for the preparation of the Pre-Trial Order in this case. Colpo's counsel prepared the agreed upon text of the Order, and provided secretarial and photocopying services to the other parties. In my view, however, there is no record support for a finding that Colpo's efforts in compiling the Pre-Trial Order were of substantive assistance to the Secretary in litigating the Title IV case.

### D. The Trial.

As previously noted, Colpo rendered valuable assistance to the Secretary and to the Court by laying a foundation for an agreed statement of facts relating to the successful Title IV claim. The record does not, however, support Colpo's present claim that counsel's work at trial materially aided the Secretary. The trial developed a record on the disputed factual issues involved in the two unsuccessful claims. Although this evidence may have borne also on the interpretation of Section 481(e) this Court adopted, it was not a significant or material contribution to the resolution of this issue.

### E. Election Procedures.

Following this Court's Order vacating the November 1979 election and ordering a new election held, a dispute arose over Colpo's right to a list of firms employing members of Local 326. Colpo insisted that he had a right to such a list. Eventually Colpo persuaded the Secretary to adopt the position that Colpo had a right to examine every collective bargaining agreement, and to compile his own list of employers from those contracts. This Court adopted the Secretary's position, and ordered the Local to provide the contracts to Colpo. See Memorandum Opinion, filed April 24, 1981, 512 F.Supp. 1093.

In Brennan the Third Circuit approved of the D.C. Circuit's conclusion that "the Trbovich court envisioned that intervenors would perform a role independent of the Secretary in helping the Court fashion a suitable remedial order, and perhaps even assist the Secretary in supervising the conduct of the rerun." 554 F.2d at 595, see also Marshall v. United Steelworkers of America, at 850. Since the Local agreed to supply Colpo with a list of employers, rather than copies of all of the contracts, Colpo and the Secretary prevailed on this matter, see NAACP v. Wilmington Medical Center, 530 F.Supp. 1018 (D.Del.1981); Sullivan v. Commonwealth, 663 F.2d 443 (3d Cir. 1981); Maher v. Gagne, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (fees awardable under 42 U.S.C. § 1988 although plaintiff prevailed by settlement rather than litigation). Colpo's efforts to persuade the Secretary of Labor to seek an order from this Court may, therefore, be rewarded under the Brennan rationale.

### F. Application For Counsel Fees.

Colpo also seeks an award of fees for the work connected with the motion now before the Court. I find it difficult to characterize the collection of fees as being of material assistance to the Secretary of Labor, or as

conferring a "common benefit" on the membership of the Local.

In fee award cases under Title VII, or the Civil Rights Act of 1976, 42 U.S.C. § 1988, this Circuit has authorized the award of fees such as those sought here. But these fees are awarded against a defendant, *qua* defendant, under an explicit statutory authorization. *See e.g., Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978); *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978).

Colpo is entitled to collect fees from the treasury of Local 326 only to prevent unjust enrichment of the Local's membership which has enjoyed a legal victory at Colpo's expense. In such "benefit" conferred cases, the Third Circuit has denied recovery for time spent in litigating a fee application. *E.g., Lindy Bros. Builders, Inc. v. American Standard Radiator & Standard Sanitary Corp.*, (Lindy II), 540 F.2d 102, 111 (3d Cir. 1976) (en banc), ("there being no benefit to the fund from services performed by [attorneys] in connection with their fee application, there should be no attorney's fee award from the fund for these services"). The theory is that while counsel's efforts in securing a judgment conferred a benefit on the group who should share the expense of securing it, once the merits are resolved, the group receives no additional benefits from the attorney's efforts to secure a counsel fee award. Indeed, at that point "the attorney's interest becomes adverse to the interest of the class which he represents." *Prandini, supra*, 585 F.2d at 53. Although there is a tenuous connection between compensating attorneys for the time spent collecting their fees and the common benefit obtained from providing counsel for intervening plaintiffs, it is too thin a reed to support an equitable fee award against the interests of the beneficial class.

This is not to say that an intervenor could not obtain an award of such fees if a union engaged in bad faith tactics designed to prevent or forestall a just fee award. But this fee would not be predicated upon a "common benefit", but upon a completely distinct equitable principle. *See Newman v. Piggie Park Enterprises*, 390 U.S. 400,

402 note 4, 88 S.Ct. 964, 966 note 4, 19 L.Ed.2d 1263 (1968); *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *Hall v. Cole, supra*, 412 U.S. at 5, 93 S.Ct. at 1946 (fee shifting punitive, triggered by bad faith). There has been no showing of vexatious or bad faith opposition to the award of fees in this action.

### III. COMMON BENEFIT.

The ultimate issue, having shown that Colpo materially aided the Secretary in prosecuting his successful Title IV action, is whether the action itself conferred "a substantial benefit on the members of an ascertainable class, and [whether] the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among [the members of the class]." *Brennan v. United Steelworkers of America*, 554 F.2d at 600, *quoting Mills v. Electric Auto Lite, supra*, 396 U.S. at 393–94, 90 S.Ct. at 626.

Colpo has shown two results of his intervention in support of the Secretary which were beneficial to the membership of Local 326. First, although Colpo was not elected in April 1981, the vindication of his right to be a candidate furthered the fundamental objective of union democracy. The mere existence of an electoral process open to all legally qualified candidates is a goal of the LMRDA and a benefit to the Local. Second, this case established a construction of Section 481(e) which protects members of Local 326 from disqualification as voters or candidates through employer mistake or neglect. The International Union has recently incorporated this interpretation of the statute into its Constitution. Art. I, § 5. (PX–4, p. 35). The fact that union members outside Local 326 may also have benefited from the Court's decision does not preclude a finding that Local 326 members enjoyed the primary benefits of this Court's decision, which "vindicated important rights of Union members" and "establish[ed] significant new principles of law...." *Marshall v. United Steelworkers, supra*, at 853, *quoting Marshall v. Local Union No. 639*, C.A. No. 1963–72 (D.D.C. August 4, 1977).

**IV.**

Counsel for the Local does not dispute the number of hours Colpo's counsel worked, as set forth in his affidavits, or the reasonableness of the rate of compensation sought. I will therefore request that the parties agree—if possible—upon a final schedule for the award of fees consistent with the findings and conclusions set forth herein.